WESCOM, INC., *et al.*, Plaintiffs-Appellants, *v.* WOODRIDGE PARK DISTRICT, Defendant-Appellee.

Second District    Nos. 76-286, 76-342 cons.

Opinion filed June 1, 1977.

Raymond I. Suekoff, of Suekoff & Silverman, of Chicago, for appellants.

F. Kenneth Friker and Terrence M. Barnicle, both of Klein, Thorpe, Kasson & Jenkins, of Chicago, for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

Plaintiffs appeal from orders of the trial court denying their motions to vacate an order calling an annexation election and to enjoin the holding of such election and further appeal from the order declaring and certifying the results of that election.

Two issues are determinative of this appeal:

(1) whether the territory sought to be annexed adjoins defendant park district; and

(2) whether an election should have been held in the annexed territory.

On April 13, 1976, the Board of Park Commissioners of defendant, Woodridge Park District, Du Page County, Illinois, adopted an ordinance expressing its desire to annex certain territory to the district pursuant to sections 3—2 and 3—3 of the Park District Code (Ill. Rev. Stat. 1975, ch. 105, pars. 3—2 and 3—3) and authorized the filing of a petition in circuit court for that purpose.

The petition was filed on April 20, 1976, and, without notice to any of the owners of the land sought to be annexed (none being required by the Park District Code) on May 5, 1976, the trial court entered an order finding that the territory adjoined the district, that no legal voters resided therein and called an election to be held only in the district on the question of whether the territory should be annexed to the district. The court set the date of the election for June 1, 1976, and prohibited further registration of voters in either the territory or the district prior to the election.

Plaintiffs, who are owners or residents of approximately 72 acres of the territory sought to be annexed and alleged to be used for industrial, agricultural and residential purposes, filed their motions to enjoin the holding of the election and to vacate the May 5 order calling it. The verified motions alleged that the territory did not adjoin the district, as required by the statute, and that plaintiff, William J. Murphy, was a legal

voter residing in the territory on May 5, 1976, thus requiring that the election also be held in that territory.

After notice to Woodridge, a hearing was held on these matters on May 28 wherein the parties stipulated that Murphy had been a legal voter since April 28, 1976. The court considered the pleadings and exhibits appended and denied both motions. The election was held as scheduled without allowing any voters in the territory to participate. The voters of the district by a substantial margin approved the annexation and thus included the plaintiffs as a part of the Woodridge Park District.

An examination of a map or plat is the best approach to the first contention of plaintiffs in this case. The ordinance adopted by defendant and its petition to the court to call the election described the territory sought to be annexed by metes and bounds, but did not include a plat to aid the trial court in visualizing the physical relationship between the park district and the territory it sought to annex. Plaintiffs' motion did include a plat, as follows:

As may be seen, Woodridge has no common boundary with plaintiffs' land but does connect to it by means of a corridor or strip of right-of-way owned by Northern Illinois Gas Company. This strip has a common boundary with Woodridge at one end for 120.5 feet then extends perpendicularly east for one-half mile (2640 feet) to a similar connection with plaintiffs' land before reaching out and around plaintiffs' 72 acres.

Section 3—2 of the Park District Act permits annexation of territory "adjoining" a district. In considering questions of disputed annexations to municipal bodies, the courts have generally held adjoining to be synonymous with contiguous, both terms meaning a touching or adjoining in a reasonably substantial physical sense, and found that the line of demarcation between reasonableness and unreasonableness of the contiguity must be drawn from the facts of each case. *Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 352, 167 N.E.2d 169, 175; *In re Annexation to the Village of South Barrington* (1972), 7 Ill. App. 3d 958, 963, 289 N.E.2d 1, 5.

This court in *In re Annexation to the Village of Buffalo Grove* (1970), 128 Ill. App. 2d 261, 261 N.Eb 746, carefully reviewed the decisions construing contiguity and noted that the courts have considered the width of the connection, or common boundary, of annexed territory to the annexing municipality and the length of the projection beyond the municipal boundaries in determining whether the test of contiguity had been met. The court there upheld an annexation where the connecting strip of land between the village and the land of the objectors shared a common boundary with the village for a length of 675 feet and was 300 feet in width extending some 1312.5 feet to the objectors' land. *Buffalo Grove* appears to be the reported annexation case with dimensions closest to those in the instant case and those dimensions demonstrated a reasonably substantial physical adjoining of the village and the annexed territory.

■■ We do not believe the test has been met here. In *People ex rel. Adamowski v. Village of Streamwood* (1959), 15 Ill. 2d 595, 601, 155 N.E.2d 635, 638, the supreme court defined "contiguous" to mean adjacent to and parallel to existing municipal limits, noting that strip or corridor annexations have always been condemned by the courts and never been permitted by the legislature. *Village of Streamwood* and the many cases following it were primarily concerned with street or highway annexations *(People ex rel. Coojar Realty Corp. v. Village of Burr Ridge* (1967), 81 Ill. App. 2d 203, 225 N.E.2d 39), and it has been said that such cases apply only to such annexations. *(In re Annexation to the Village of South Barrington* (1972), 7 Ill. App. 3d 958, 963, 289 N.E.2d 1, 5. But see *In re Annexation to the Village of Plainfield* (1975), 25 Ill. App. 3d 1026,

1031, 323 N.E.2d 841, 844.) Certainly, cases dealing with privately owned tracts on the one hand, and streets or highways on the other, are the more precise precedent where those categories are clearly the subject of the litigation (*People ex rel. Coojar Realty v. Village of Burr Ridge* (1967), 81 Ill. App. 2d 203, 206, 225 N.E.2d 39, 41), but we consider that a utility right-of-way, as in the instant case, may well have characteristics of each category.

There would seem to be good reason to also consider the "adjacent and parallel" test, which has not been limited to street and highway annexations by the supreme court, where narrow corridors of land owned by a public utility are used as connective links between other privately owned tracts and a municipality for annexation purposes. We see little difference between such strips and highways in this context; both meander throughout unincorporated territory adjacent to municipalities and are convenient conduits through which annexations which could not otherwise be accomplished might circumvent the annexation statutes.

The test of whether annexed territory is contiguous to and adjoins the municipality remains the same: is there a touching or adjoining in a reasonably substantial physical sense? Among the factors to be considered in that determination are the extent of a common boundary between the areas, the length of the projection of the annexed territory beyond municipal boundaries and, in this case, whether such projection extends perpendicular to or is parallel with such boundaries.

We find that plaintiffs' land and the connecting corridor we have described do not adjoin the district as required by the statute and the contrary finding by the trial court was against the manifest weight of the evidence.

Plaintiffs further contend that the trial court erred in refusing to conduct the election in the territory sought to be annexed. The court had determined in the ex parte hearing held May 5, 1976, on defendant's petition for annexation, that no legal voters resided in the territory and, therefore, the statute did not require the election to be held therein. Plaintiffs' verified motions to enjoin the election and to vacate the May 5 order alleged that, in fact, William J. Murphy, one of the plaintiffs, was a legal voter who resided in the territory.[1]

Defendant stipulated that Murphy had registered to vote on April 28, 1976, and was a legal voter on May 5 but contends that the question of whether the conditions of the annexation statute have been met is determined as of the date it adopted its ordinance on April 13, 1976, or on

---

[1] Section 3—3 of The Park District Code requires that the proposition to annex the territory carry in both the district and the territory where an election is required in each area.

April 20, 1976, when its petition for annexation was filed in the trial court. Defendant relies upon *People ex rel. Cherry Valley Fire Protection District v. City of Rockford* (1970), 120 Ill. App. 2d 275, 256 N.E.2d 653, and *In re Annexation to the Village of Willowbrook* (1965), 62 Ill. App. 2d 45, 210 N.E.2d 25, for its position that the date of the passage of an annexation ordinance by a municipality governs in this case. While holding as defendant suggests these cases are factually distinguishable from the instant case. In *City of Rockford* land had been annexed to the city by ordinance as permitted by the applicable statute (Ill. Rev. Stat. 1967, ch. 24, par. 7—1—8) providing for such annexation solely by the adoption of an ordinance by the city and without the intervention of court proceedings. In a subsequent challenge to the validity of the annexation by a quo warranto action, this court held that compliance with the annexation statute is determined by the facts existing at the date of the adoption of the ordinance rather than at the date of the quo warranto hearing in those situations where the annexing statute does not call for a judicial determination of whether the statutory requirements for annexation have been met. The statute in *City of Rockford* did not require such judicial determination.

In *City of Rockford* this court followed the analysis of *In re Incorporation of Village of Capitol Heights* (1968), 41 Ill. 2d 256, 242 N.E.2d 247, where the supreme court considered a statute establishing the conditions to be met for the incorporation of a village. The statute required a judicial hearing and determination by the court of the statutory conditions for incorporation and the court held that in such a case the facts existing at the time of the court hearing were determinative of compliance with the statute. (See *La Salle National Bank v. Village of Burr Ridge* (1967), 81 Ill. App. 2d 209, 225 N.E.2d 33; *People ex rel. Saam v. Village of Green Oaks* (1965), 55 Ill. App. 2d 51, 204 N.E.2d 149.) *In re Village of Willowbrook* (1965), 62 Ill. App. 2d 45, 210 N.E.2d 25, also relied on by defendant, does not reach an inapposite conclusion on analysis of the unique factual situation present in that case.

The Park District Code, like most municipal codes, contains several sections concerned with annexation of territory so as to meet the various situations which are presented to a district. Some of these statutes require the intervention of a court and others do not. (Compare Ill. Rev. Stat. 1975, ch. 105, pars. 3—8 through 3—10, each permitting annexation to a park district solely by ordinance adopted by the park commissioners.) In this case, however, defendant acted under sections 3—2 and 3—3 which required the district to present its ordinance or petition to the court for its determination of compliance with the statute.

Defendant's ordinance did not state whether or not legal voters resided in the territory sought to be annexed; it only expressed the district's desire

to annex the territory and authorized its attorneys to file a petition with the court requesting that the court cause the question of annexation to be submitted to the voters of the district "and of the territory proposed to be annexed if any legal voters reside therein * * *."

The parties agree that the trial court's order of May 5, 1976, was incorrect in its factual determination that no legal voters resided in the territory and they differ only as to the effect upon the validity of the order.

■■ We believe it is clear that the facts existing at the time of the hearing on May 5, 1976, must determine whether there was compliance with the statutory conditions for annexation. Since it is apparent that at least one legal voter resided in the territory at that time, it was incumbent on the court to call an election in both the district and the territory.

Defendant suggested in oral argument that the date it filed its petition for annexation with the trial court, April 20, 1976, might also be the proper time to consider whether there was compliance with the statute, pointing out that no voters had then registered in the territory. No cases have been submitted in support of that proposition and we believe *In re Incorporation of Village of Capitol Heights* (1968), 41 Ill. 2d 256, 242 N.E.2d 247, would not permit that conclusion.

Defendant presented a motion to dismiss this appeal for mootness in that the election sought to be enjoined by plaintiff was held June 1, 1976. We took the motion with the case and now deny it. The parties raise other issues which need not be discussed in this opinion since, in our view, the order of the trial court denying vacation of its May 5, 1976, order which called the election and its order certifying the results of that election must be reversed.

Judgment reversed.

RECHENMACHER, P. J., and BOYLE, J., concur.