RONALD M. HUGHES, JEFFREY LANE CLEMMONS, CLARENCE Y. SYKES, OLIVER J. & SHIRLEY W. FOWLER, BARRY STEELE, DONNA K. ATKINS, SOUTHPORT ELECTRICAL SERVICE, INC., KEITH R. & HOLLEY G. ROGERS, DONALD B. & ANN T. STEPHENSON, JULIUS & MARTHA G. CARTERET, CARMICHAEL CONSTRUCTION CO., INC., GREGORY A. & VICKIE M. POTTER, MARVIN CARROLL & JULIE J. MARTIN, Petitioners v. TOWN OF OAK ISLAND, Respondent

No. COA02-416

(Filed 3 June 2003)

**1. Cities and Towns— annexation—classification of property—use intended but not realized**

The Town of Oak Island misclassified a property as commercial under the subdivision test for annexation where the owners intended to construct a storage facility on the site but had not made the required progress by the time the Town approved the annexation plan.

**2. Cities and Towns— shoestring annexation—intent to annex commercial property—contiguity requirement**

The trial court did not err by finding and concluding that the Town of Oak Island had engaged in an impermissible shoestring annexation where there was sufficient evidence that the Town

acted primarily to annex valuable commercial property and that the ordinance's boundaries were inconsistent with the contiguity requirement of N.C.G.S. § 160A-36(b).

**3. Cities and Towns— defective ordinance—declared void rather than remanded**

The trial court acted within its discretion by declaring an annexation ordinance null and void rather than remanding it where petitioners did not offer evidence that the annexation area could meet contiguous boundary requirements on remand without property which petitioners had established should be excluded.

Judge STEELMAN concurring in part and dissenting in part.

Appeal by respondent from judgment entered 29 May 2001 by Judge James F. Ammons, Jr. in Brunswick County Superior Court. Heard in the Court of Appeals 22 January 2003.

*Shipman & Hodges, L.L.P., by C. Wes Hodges, II, for petitioner-appellees.*

*Roger Lee Edwards, P.A., by Roger Lee Edwards, for respondent-appellant.*

HUDSON, Judge.

Respondent, the Town of Oak Island, North Carolina, adopted an ordinance to annex approximately 207 acres of land. Petitioners, who own real and personal property in the proposed annexation area, filed a petition for judicial review of the ordinance. After a hearing, the superior court declared the ordinance null and void, concluding that it failed to comply with North Carolina's annexation statutes. Respondent appeals and, for the reasons set forth below, we affirm the decision of the trial court.

BACKGROUND

On 29 November 1999, respondent adopted a resolution declaring its intent to annex an area approximately 207 acres in size on the northern side of the Atlantic Intercoastal Waterway. The area runs to the intersection of Long Beach Road and N.C. Highway 211 and includes property located on both sides of Long Beach Road. Respondent approved the annexation plan on 14 December 1999 and made the plan available to the public. On 14 March 2000, after a pub-

lic informational meeting and two public hearings, respondent adopted an ordinance entitled "An Ordinance to Extend the Corporate Limits of the Town of Oak Island, Under the Authority Granted by Chapter 160A, Article 4A, Part 2 of the North Carolina General Statutes—Long Beach Road Corridor Annexation" (hereafter "ordinance"), with an effective date of 31 March 2001. The ordinance purported to involuntarily annex real and personal property belonging to the petitioners.

On 12 May 2000, petitioners filed a petition for review of the ordinance by the superior court, pursuant to G.S. § 160A-38. Petitioners contended that the ordinance was invalid because it did not meet the statutory requirements imposed by G.S. §§ 160A-35, 160A-36, and 160A-37. After a hearing, the superior court declared the ordinance null and void, concluding (1) that a tract of land known as the "Big Toy Storage" tract was misclassified as commercial use at the time of annexation and, therefore, that the ordinance did not meet the subdivision test set forth in G.S. § 160A-36(c)(1); (2) that without the Big Toy Storage tract, the ordinance did not meet the contiguous boundary requirements set forth in G.S. § 160A-36(b)(2); and (3) that the ordinance violated the spirit and purpose of the contiguity requirement of G.S. § 160A-36 and constituted an impermissible "shoestring" annexation. Respondent filed post-trial motions pursuant to Rules 59 and 60 of the North Carolina Rules of Civil Procedure, which the superior court denied. Respondent now appeals.

ANALYSIS

A.

The superior court's review of an annexation ordinance is limited to deciding (1) whether the annexing municipality complied with the statutory procedures; (2) if not, whether the petitioners will suffer material injury as a result of any alleged procedural irregularities; and (3) whether the area to be annexed meets the applicable statutory requirements. *In re Annexation Ordinance*, 278 N.C. 641, 647, 180 S.E.2d 851, 855 (1971); *Trask v. City of Wilmington*, 64 N.C. App. 17, 28, 306 S.E.2d 832, 838 (1983), *disc. review denied*, 310 N.C. 630, 315 S.E.2d 697 (1984). Where the annexation proceedings show prima facie that the municipality has substantially complied with the requirements and provisions of the annexation statutes, the burden shifts to the petitioners to show by competent evidence a failure on the part of the municipality to comply with the statutory requirements or an irregularity in the proceedings that materially prejudices

the substantive rights of the petitioners. *In re Annexation Ordinance*, 278 N.C. at 647, 180 S.E.2d at 855-56.

On appeal, we are bound by the trial court's findings of fact if they are supported by competent evidence, even though there is evidence to the contrary. *Humphries v. City of Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980). The trial court's conclusions of law are reviewable de novo. *Id.*

B.

[1] Respondent argues, first, that the evidence did not support the trial court's finding and conclusion that Tax Parcel 237-25, known as the "Big Toy Storage" tract and located within the Long Beach Corridor, was not in commercial use at the time of annexation. Although assignment of error number 1 refers to page 29 of the record (the superior court's order), which contains several findings of fact, the only finding that respondent argued specifically in its brief is number 28. That finding and the relevant conclusion are as follows:

Finding of Fact

28. As of December 14, 1999, the time of annexation, the Big Toy Storage Property was vacant and undeveloped, and the Town improperly classified the Big Toy Storage Property as being used for commercial purposes at the time of annexation.

. . .

Conclusion of Law

5. The Town misclassified the Big Toy Storage Property acreage as being in use for commercial purposes at the time of annexation.

We disagree and conclude that the trial court's finding is supported by the evidence.

Pursuant to the "subdivision" test set forth in G.S. § 160A-36(c)(1), at least 60% of the total acreage of a proposed an- nexation site, not counting the acreage used at the time of annexation for commercial, industrial, governmental, or industrial purposes, must consist of lots and tracts three acres or less in size. "At the time of annexation" is statutorily defined as the date on which the munic- ipality approved its annexation report. N.C. Gen. Stat. § 160A-36(c). G.S. § 160A-36(c) defines acreage in use for commercial purposes as "acreage actually occupied by buildings or other man-made struc-

tures together with all areas that are reasonably necessary and appurtenant to such facilities for purposes of parking, storage, ingress and egress, utilities, buffering, and other ancillary services and facilities." Accordingly, we must decide whether the superior court properly found and concluded that the Big Toy Storage tract was not being used for commercial purposes on 14 December 1999, the date respondent approved its annexation plan.

The Big Toy Storage tract, which is approximately 10.74 acres in size, was classified by respondent as being used for commercial purposes at the time of annexation. The trial court found and concluded, however, that the Big Toy Storage property "was vacant and undeveloped, and the Town improperly classified [it] as being used for commercial purposes" as of 14 December 1999.

After a careful review, we conclude that the trial court's findings and conclusions were supported by competent evidence. We see ample evidence that, even though the tract's owners intended to construct a storage facility on the property, they had not made enough progress to qualify as "in use" for commercial purposes as of 14 December 1999. Clayton Gsell, an owner of the Big Toy Storage facility, testified in his deposition that, as of December 1999, the tract was still a vacant piece of property and that no acres were occupied by buildings or other man-made structure except for one four-foot by eight-foot sign advertising the future storage facility.

Moreover, according to an affidavit from Terry Quinn, a director and officer of Big Toy Storage, Inc., the property consisted of vacant land and was not being used, either directly or indirectly, for any purpose in December 1999. He also indicated that the property was not used for commercial purposes at any time between 14 July 1999, when Big Toy Storage first acquired the property, through February 2000. Martin Long, the re-evaluation supervisor for Brunswick County who appraises tax parcels in the county, testified that he never saw any buildings or any commercial activity on the property during his numerous trips by the property in 1999 and 2000. This evidence amply supports finding of fact number 28.

The court also found that the Brunswick County tax card for the property expressly stated that the property consisted of 10.74 acres of "vacant land" and that respondent's own, informal surveys confirmed that there were no structures or ancillary services and facilities on the property as of December 1999. At the time of the approval of the annexation report, the court found, the property was zoned commer-

cial low density, and the owners intended to develop the property as a storage facility where the individual units would be sold to the public for recreational vehicles and boats. The court also found, however, that as of 14 December 1999, (1) the property had not been graded; (2) no foundation had been laid; (3) no storage facilities of any kind had been constructed; (4) no parking facilities of any kind had been built; (5) no storage slips had been sold or offered for sale; and (6) the owners were deriving no commercial revenue from the property. The court also found that all the owners had done was to enter into a listing agreement with a commercial real estate company, apply for and receive a driveway permit from the state, apply for storm water run-off and erosion control permits from the state, contract with an engineering firm to assist in the design and layout of the groundwater draining and water and sewer systems for the property, and submit a site plan for the development of the property to the sanitary district that was the zoning authority in the area at the time. Facilities on the site plan, however, could not be constructed until the property owners had obtained all the applicable permits, the court found, and the owners here did not even apply for building, mechanical, electrical, and plumbing permits until 2000. These findings, about which respondent has made no argument in its brief, in addition to finding number 28, are certainly sufficient to support conclusion of law number 5.

Respondent argues that the property was properly classified as being used for commercial purposes at the time of annexation because it was owned by a corporation that intended to construct a commercial facility on the premises sometime in the future. This contention has been expressly rejected by both our Supreme Court and this Court. In *Southern Railway Co. v. Hook*, 261 N.C. 517, 135 S.E.2d 562 (1964), the Supreme Court held that neither ownership nor future plans are relevant in determining whether property may be annexed. Specifically, Bessemer City, North Carolina, had classified an entire 13.75 acre tract owned by Ideal Industries ("Ideal") as being in use for industrial purposes at the time of annexation. *Id.* at 520, 135 S.E.2d at 565. The property was located across the street from Ideal's plant. About 1.4 acres of the lot were used for parking, and the remaining 12.35 acres were vacant and unused. *Id.* at 518-19, 135 S.E.2d at 564. An Ideal officer testified that Ideal had purchased the property for the purpose of eventually expanding its operation to the tract. Ideal had graded the lot but it was otherwise vacant and unused except for the parking area. *Id.* at 519-20, 135 S.E.2d at 564-65.

The trial court upheld the city's classification of the entire tract as being in use for industrial purposes, and the petitioners appealed. In reversing the trial court, the Supreme Court noted that the tract was "being held for possible industrial use at some indefinite future time. It is industrially owned but not industrially used." *Id.* at 520, 135 S.E.2d at 565. Because the property could not be classified as industrial, the city failed the subdivision test, and the ordinance was struck down. *Id.*, see also *Arquilla v. City of Salisbury*, 136 N.C. App. 24, 31-32, 523 S.E.2d 155, 161 (1999) (holding that the city improperly classified the tract at issue as governmental and reiterating that future plans for use are not relevant in determining whether property is subject to annexation), *disc. review denied*, 351 N.C. 350, 543 S.E.2d 122 (2000).

The superior court here found and concluded that, even though the owners of the Big Toy Storage property intended to construct a storage facility on the site, they had not made the required progress as of 14 December 1999. All that the owners had done prior to December 1999 was to record a site plan for future development and obtain a driveway permit. The facility could not be constructed because the required permits were not even applied for until 2000. None of the findings or conclusions to this effect have been specifically challenged on appeal. In sum, we conclude that the evidence was abundant to support the trial court's findings and conclusions that respondent misclassified the Big Toy Storage property as being in use for commercial purposes at the time of annexation.

C.

[2] Respondent also argues that the trial court erred in finding and concluding that the ordinance was an impermissible "shoestring" annexation because there was no evidence to support the court's finding that the respondent's main purpose in enacting the ordinance was to annex valuable commercial property. Again, we disagree.

Here, the trial court found and concluded that respondent intentionally manipulated the configuration of the annexation area for the purpose of annexing valuable commercial property at the intersection of Long Beach Road and N.C. Highway 211. The court also concluded that respondent violated the spirit and purpose of the contiguity requirement of G.S. § 160A-36(b) and that the ordinance constituted an impermissible shoestring annexation.

Specifically, the court found that four properties are located in the annexation area with a property tax value of at least one million

dollars and that each property is located at the far end of the annexation area at the intersection of Long Beach Road and N.C. Highway 211. The court also found that the "annexation of the valuable commercial property . . . was a main purpose of the Town's Ordinance." To reach those properties, the court found, respondent was required to include in the annexation area property fronting on Villanova Loop Road and Fish Factory Road to provide additional contiguity to the existing town limits. Without annexing these properties, respondent would not have been able to annex the valuable commercial property and still comply with the one-eighth contiguous boundary requirement set forth in G.S. § 160A-36(b)(2). The court also found that respondent intentionally excluded several other lots and tracts from the annexation area because of the negative effect that their inclusion would have had on respondent's compliance with the annexation statutes' requirements. And, in doing so, respondent has "created the potential for confusion in the provision of emergency and other such services to the annexation area and the excluded properties surrounded on both sides by area included within the annexation area." The court also found that the lots and tracts in the annexation area are, for the most part, already receiving from other entities the full range of municipal services that respondent proposed to provide in its annexation plan.

Again we conclude that the trial court's findings and conclusions were supported by competent evidence. At the hearing before the trial court, counsel for respondent admitted that one of the purposes of the annexation was to take in the income-producing, high-value properties at the end of the annexation area. Although respondent argues that reaching these properties was just one purpose of the annexation, and not the main purpose, the court found and concluded otherwise, and the evidence supports these findings.

The only other purpose for the annexation advanced by respondent was to enhance the provision of municipal services for the properties to be annexed. However, the evidence and the findings did not bear this out. As the court found, the annexation area excluded lots that are surrounded by included areas. For example, the Long Beach Road right of way is included in the annexation area, even though properties on both sides of that road were not. Further, many of the included properties are for the most part already receiving the full range of services from other entities. The court found that by excluding certain lots and tracts from the annexation area, respondent created the potential for confusion in the provision of emergency and

other services, since the properties in the annexation are surrounded on both sides by properties excluded from the annexation.

In its assignment of error, respondent refers the Court only to conclusions of law in the record at pages 34 and 35 but does not specify by number which conclusions it challenges. Therefore, we review the following conclusions to determine if the findings of fact support them and if they are consistent with applicable law:

Conclusions of law

9. Literal compliance with the contiguity requirements of the annexation statutes is insufficient where it would result in the subversion of the purposes underlying this requirement, which is to ensure that essential government services are provided to residents within compact borders.

10. By intentionally manipulating the configuration of the annexation area, for the purpose of annexing the valuable commercial property at the intersection of Long Beach Road and N.C. Highway 211, the Town violated the spirit and purpose of the contiguity requirements of N.C.G.S. § 160A-36(b).

11. The Town's Ordinance constitutes an impermissible "shoestring" annexation.

Findings of fact numbers 34-48, none of which are challenged on appeal, support each of these conclusions. For example, the findings that "the annexation of the valuable commercial property at the intersection" was a main purpose of respondent's ordinance and "that the Town included these narrow strips of property . . . in order to reach the valuable commercial property" support conclusion number 10. Findings 42, 45, and 46, to the effect that inclusion of some parcels and exclusion of other adjacent parcels "created the potential for confusion in the provision of emergency and other such services," support conclusions numbers 9, 10, and 11 in that these boundaries contravene the spirit and purpose of the contiguity requirements—to provide essential services within compact borders.

In addition, the few cases on the subject of shoestring annexation also support our holding. Pursuant to G.S. § 160A-36(b), the area proposed for annexation must be contiguous to the existing boundaries of the municipality. Literal compliance with this provision is not sufficient, however, where it would result in the subversion of the purpose underlying the contiguity requirement—to ensure that the

essential governmental services are provided to "residents within compact borders." *Hawks v. Town of Valdese*, 299 N.C. 1, 12, 261 S.E.2d 90, 97 (1980). A shoestring annexation exists where a municipality uses a narrow corridor to connect the municipality to an outlying, noncontiguous area that the municipality desires to annex. *Amick v. Town of Stallings*, 95 N.C. App. 64, 71, 382 S.E.2d 221, 225-26 (1989), *disc. review denied*, 326 N.C. 587, 391 S.E.2d 40 (1990). Shoestring annexations contravene the contiguous boundary requirements set forth in the annexation statutes. *Id.*

In *Amick*, the main purpose of the town's ordinance was to annex three subdivisions that were not contiguous to the existing municipal limits. *Id.* at 66-67, 382 S.E.2d at 223-24. To achieve that purpose, the town annexed a lengthy, narrow strip of land adjacent to the town and used the strip to reach the desired subdivisions. *Id.* Doing so permitted the town to satisfy G.S. § 160A-36(b)(2), which requires that at least one-eighth of the aggregate external boundary of the annexation area coincide with the existing municipal limits. "[S]uch a crazy quilt boundary is not consistent with sound urban development of a municipality capable of providing essential governmental services to residents within compact borders." *Id.* at 71, 382 S.E.2d at 226 (citations and quotation marks omitted). Holding that such shoestring annexations contravene the clear purpose of the annexation statutes, this Court rejected the town's proposed ordinance. *Id.* at 71-72, 382 S.E.2d at 226.

In sum, we conclude that sufficient evidence supports the trial court's findings and conclusions that respondent enacted the ordinance primarily to annex valuable commercial property at the intersection of Long Beach Road and N.C. Highway 211 and that the ordinance's boundaries were inconsistent with the purposes of the contiguity requirement of G.S. § 160A-36(b). Further, the findings support the conclusion that respondent's ordinance constituted an impermissible shoestring annexation.

D.

[3] Respondent also contends that the trial court erred when it failed to remand the ordinance so that respondent could amend it. We do not agree.

G.S. § 160A-38(g) sets forth the remedies available to petitioners upon a finding that a municipality has not complied with the material provisions of the annexation statutes. A court may:

(2) Remand the ordinance to the municipal governing board for amendment of the boundaries to conform to the provisions of G.S. 160A-36 if it finds that the provisions of G.S. 160A-36 have not been met; provided, that the court cannot remand the ordinance to the municipal governing board with directions to add area to the municipality which was not included in the notice of public hearing and not provided for in plans for service.

. . .

(4) Declare the ordinance null and void, if the court finds that the ordinance cannot be corrected by remand as provided in subdivisions (1), (2), or (3) of this subsection.

N.C. Gen. Stat. § 160A-38(g)(2) & (4). Because respondent did not comply with G.S. § 160A-36, see *supra*, the only available options were to remand the ordinance back to respondent for amendment of the boundaries or to declare the ordinance null and void. Here, petitioners established at the hearing before the trial court that the Big Toy Storage property would have to be removed from the annexation area in order for the area to comply with the subdivision test set forth in G.S. § 160A-36(c)(1). However, once the Big Toy Storage property is excluded from the annexation area, the revised annexation boundary would have to run along the western property line of Tax Parcel 221-50. According to an affidavit from Sherwin D. Cribb, a registered land surveyor, only 7.76% of the boundary of the annexation area would then be contiguous to the existing municipal limits. Such a configuration runs afoul of G.S. § 160A-36(b)(2), which requires that at least one-eighth of the aggregate external boundaries of the annexation area coincide with the municipal boundary.

Respondent agreed at the hearing that the area would violate the contiguous boundary requirements but did not offer any other evidence that the annexation area could be corrected on remand. In light of respondent's failure to provide such evidence, we conclude that the trial court acted within its discretion in declaring the ordinance null and void rather than remanding it for further proceedings.

CONCLUSION

For the reasons set forth above, we affirm the decision of the trial court.

Affirmed.

Judge MARTIN concurs.

Judge STEELMAN concurs in part and dissents in part.

STEELMAN, Judge, concurring in part and dissenting in part.

I concur in parts A and B of the majority's opinion, but I respectfully dissent from parts C and D.

Part C of the majority opinion affirmed the ruling of the trial court which held that respondent's annexation was an impermissible "shoestring" annexation. Only one reported appellate case has found an annexation to be invalid on this basis. In *Amick v. Town of Stallings*, 95 N.C. App. 64, 382 S.E.2d 221 (1989), the Town used a strip of land 7,411 feet long and varying in width from 50 to 200 feet to meet the one-eighth contiguous boundary requirement under N.C. Gen. Stat. § 160A-36(b)(2) (2001). The trial court concluded that this portion of the proposed annexation had " 'no relationship to any urban or municipal purpose' " and remanded the ordinance for amendment. *Id.* at 68, 382 S.E.2d at 224. This Court affirmed the trial court's order remanding for amendment and held that even though the Town literally complied with the statutory requirements, the annexation subverted the underlying purpose of the statute to ensure sound urban development. *Id.* at 71, 382 S.E.2d at 225-26.

In this case, the configuration of the annexation area does not rise to the level of flouting the intent of the statute as was found in *Amick*. Unlike the narrow "shoestring" corridor in *Amick* which had no relation to commercial activity, the proposed annexation here followed a commercial corridor along a major roadway. Such annexation does not contravene the statute's policy of ensuring sound urban development. The configuration of the annexation area should not have been a basis for invalidating the annexation in the instant case. It is only in such unusual cases as *Amick* that the court should invalidate an annexation ordinance which complies with the requirements of the statute.

As to part D of the majority opinion, upon a finding that an annexation ordinance is invalid, the trial court may either remand the ordinance to the municipality for amendment or declare the ordinance null and void, if it cannot be corrected by amendment. N.C. Gen. Stat. § 160A-38(g) (2001). In this case, defendant presented a revised plan

for annexation drawn by a registered land surveyor which clearly showed that even with the exclusion of the Big Toy Storage tract, the annexation area could be amended to comply with all provisions of N.C. Gen. Stat. Chapter 160A. I would remand the ordinance to defendant for amendment rather than declaring it null and void.